> *Order of redetermination will be entered on 10 days' notice, under Rule 50.*

## APPEAL OF MARINE INSURANCE COMPANY, LTD.

Docket No. 2242.       Decided September 18, 1926.

1. The interest on Anglo-French Loan bonds and British Government bonds owned by a foreign company but held in the United States is not income from sources within the United States within the meaning of the Revenue Act of 1918.

2. A foreign insurance company doing business within the United States is entitled to deduct, in computing its net income from sources within the United States, the cost of the reinsurance of risks written within the United States, whether such reinsurance is effected within or without the United States.

*Albert C. Wall, Esq.,* for the petitioner.
*A. H. Fast, Esq.,* for the Commissioner.
*William H. Hotchkiss, Esq.,* as *amicus curiae.*

This appeal is from the determination of a deficiency in income and profits taxes for the year 1918 in the amount of $26,048.31. The deficiency arises from the inclusion by the Commissioner in the taxpayer's income of the amount of $25,042.78, received by it in the year 1918 as interest on English and French Government bonds, and the disallowance as a deduction from gross income of the cost of reinsurance or risks written by the United States branch.

### FINDINGS OF FACT.

(1) The taxpayer is a corporation organized under the laws of Great Britain, and is engaged in the business of marine insurance in Great Britain, the United States, and other countries. Its business in the United States is transacted through branch offices located at Nos. 5–7 South William Street, New York, N. Y.

(2) Some time prior to the year 1918, the taxpayer, for the protection of its policyholders, deposited with the Guaranty Trust Company of New York, as trustee, certain Anglo-French Loan 5 per cent bonds and British Government 5½ per cent bonds. During the year 1918, the Guaranty Trust Co., as such trustee, collected and

paid over to the taxpayer, interest on these bonds in the amount of $25,042.78.

(3) The system used by the taxpayer in the conduct of its business is the one under which nearly all of the exports and imports of the United States are insured under marine insurance. It is as follows:

The shipper of merchandise takes out an insurance policy, usually with one insurance company, covering all of his imports or exports wherever and however made. These policies are known as " open contracts " and they require the insurance company to take charge of every shipment made by the insured thereunder. In many cases the policyholder does not know until after the vessel has sailed exactly how much cargo belonging to him is loaded on such vessel, because, having shipped his merchandise from the interior under through bills of lading, particulars as to the name of the vessel, etc., can only be furnished after the cargo is loaded and often only after the vessel has sailed. This being so the insurance company may find that a number of its policyholders have shipments on the same vessel, and it can not ascertain the extent of its liability until after the vessel is at sea and in some cases until after the property has actually been destroyed. The same conditions apply to insurance on imports from foreign countries.

It is and has been the custom of the taxpayer and other marine insurance companies, in order to avoid too great a liability under their policies, to protect themselves by reinsurance contracts. The reinsurance is effected as follows:

(a) Before going into a particular line of business an insurance company enters into contracts with other insurance companies whereby either a certain proportion of the entire risk assumed by it, or the excess over a certain amount on any one vessel or in any one locality automatically passes to the reinsurer. The contracts are usually made prior to the acceptance of the business which will ultimately be reinsured thereunder, and are known in the maritime insurance business as " excess coverage."

(b) Where a policy with a very large limit is accepted it is usual, at the time such policy is accepted, to place reinsurance covering a certain named percentage of the total risk. In this way the original company guards against the probability of having a line in excess of that provided for by contract protection arranged as provided in paragraph (a).

(c) Special reinsurance is placed on a named vessel either before the vessel sails or in other cases shortly after she has sailed. This special reinsurance is to take care of the excessive lines of which the original underwriter has knowledge, and where the amount is so

excessive that the precautions taken under the clauses provided for in paragraph (a) and (b) have been insufficient. In the event that property covered by insurance is lost or destroyed, the company that assumed the original risk is directly liable to the insured. It in turn looks to the reinsurer for the amount for which the reinsurer is liable under the contract of reinsurance.

During the year 1918, the taxpayer reinsured a portion of the risks written by its United States branch. A part of this reinsurance was placed by the United States branch with other marine insurance companies in the United States and the remainder was placed with foreign insurance companies, in England, by the home office of the taxpayer. On the books of the home office the United States branch was charged with the cost of the reinsurance and credited with the amounts recovered from the reinsurers as losses. These reinsurance entries were transmitted to the United States branch and entered on its journal and carried to the ledger accounts in the same manner as entries relating to transactions in the United States.

During the year 1918, the home office of the taxpayer paid $183,761.43 to foreign insurance companies for reinsurance of risks written by the United States branch, and recovered $134,413.02 as losses on such contracts of reinsurance, the excess of the amounts paid for reinsurance, over the recoveries thereon, being $49,348.41. The taxpayer included in its gross income for the year 1918 the entire amount of premiums on policies of insurance sold by it in the United States in that year, and it deducted therefrom, as an ordinary and necessary business expense, the net cost of the reinsurance of the risks covered by such policies, placed by the home office.

The Commissioner, upon audit of the taxpayer's income and profits-tax returns for the year 1918, added to its net income the amount of $25,042.72 received by it in that year as interest on the Anglo-French Loan and British Government bonds hereinbefore mentioned, and disallowed the deduction from gross income of the net cost of reinsurance with foreign companies of risks written in the United States and determined a deficiency in tax in the amount of $26,048.31.

OPINION.

MARQUETTE: The identical questions presented for determination by the record in this appeal have been decided by the Board in the *Appeal of Standard Marine Insurance Co., Ltd.*, 4 B. T. A. 853. Upon the authority of that decision, we hold that the interest received by the taxpayer herein during the year 1918 on the Anglo-French Loan bonds and British Government bonds, mentioned in

the findings of fact, did not constitute income to it from sources within the United States within the meaning of the Revenue Act of 1918, and that the taxpayer in computing its net income from sources within the United States for the year 1918, is entitled to deduct the amounts paid by the home office for the reinsurance of risks written by the United States branch.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*